Barker, P. J.
The action is trover for the conversion of a quantity of ice. The defendants were the original owners of the ice, having secured and stored the same in an ice-house owned by a third party The defendants, by an instrument in writing, sold and conveyed the ice to the plaintiff for the price of $825, and who took possession of the same; and before the time of ■conversion complained of he had sold and consumed a portion of the ice. By the terms of the agreement the plaintiff was to make a cash payment of $100, and to give his time notes for the payment of the balance, to be indorsed by *618 Michael McMahon. The plaintiff paid at the time of the execution of the; contract $68.45, as part of the cash payment, the defendants waiving the immediate payment of the balance. ¡Notes were prepared by the defendant for the remainder of the purchase price, and they were handed to the plaintiff, to-be executed by him, and also for indorsement by McMahon. They were indorsed by McMahon, and delivered, unsigned by the plaintiff, to the defendant, who received the same believing that they had been properly signed by the plaintiff. Before either of the notes fell due, the defendants discovered that the notes were unexecuted by the plaintiff, and they immediately applied-to him to sign and execute the same with the approval of the indorser. On-application being made to McMahon, he refused, to give his consent that the-plaintiff might sign the notes and he remain liable thereon as indorser. The defendants thereupon, without consent of the plaintiff, took possession of the-ice in the ice-house. The defendants have not returned or offered to pay to the plaintiff any portion of the money paid on the contract at the time of its-execution. The proof tended to show that the portion of the ice consuméd by the plaintiff while the same was in his possession was equal in value to the ■ money paid by him on the contract. The defendants claimed on the trial, and the proofs tended to show, that the plaintiff omitted to sign the notes, and delivered the same to the defendants in that condition, with the intent to-cheat and defraud them, and to acquire the possession of the ice without delivering to them his notes, duly indorsed by McMahon, so that he might be-charged as indorser in the event that the same were not paid at maturity. These facts present the legal proposition, could the defendants rescind the-contract of sale on the ground of fraud, without repaying, or offering to do-so, the money which the plaintiff had paid thereon as a portion of the purchase price ? It is a general rule that a party who seeks to rescind a contract, into which he had been induced to enter by fraud, must restore to the other-party whatever lie has obtained by virtue of the contract. Gould v. Bank, 86 N. Y. 75. The reason of the rule, as stated in Thayer v. Turner, 8 Metc. 550, is that the defrauded party, so far as it is in his power, shall put the-other party in statu quo, by restoring to and revesting in him his former-property, without putting him to an action to recover it before he can exercise his right to take back the property sold, or bring an action for it. On the-argument the rule and the reason of it was admitted by the learned counsel for the defendants. The defendants intended to part with the title to the ice-when they made their contract with the plaintiff, and by the terms of it the - title to the property was transferred to their vendee, and it remained in him when this action was commenced, for the reason that the defendants had not rescinded the contract. It is well settled that where a contract is induced by fraud that fact does not render it void, or prevent the property from passing, but - gives the defrauded party the right, on discovering the fraud, to elect whether-he will continue to treat the contract as binding, or determine it, and resume-his property. Powers v. Benedict, 88 N. Y. 609. But the defendants contend that, as they had in fact regained possession of the property before this-action was commenced, the rights of the parties should be adjudicated upon, equitable principles, the same as if they had, before this action was commenced, brought an action in their own behalf in a court of equity for a rescission of the contract on the ground of fraud; and, as the value of the ice-consumed by the plaintiff was equal to the amount of the money paid on the-contract, they were entitled to an affirmative judgment rescinding the contract without restoring the money they had received on the contract of sale.. The last part of this proposition is undoubtedly sound; but the question is, are-they, in this, in a position to avail themselves of the equitable rule which they invoke ? I think not. The defrauded party may bring an action in equity to have the contract rescinded, and have full relief granted to him upon equitable principles. Such an action does not proceed upon the ground that the- *619 contract has been rescinded, but is an action for the rescission of the contract. In such an action it is sufficient for the defendant to offer to return to the defendant what he may have received on liis contract, or, if for any reason lie' cannot restore the identical property received, to make a just compensation therefor in money, and the rights of . the parties can be fully regulated and protected in the judgment to be entered. Allerton v. Allerton, 50 N. Y. 670; Gould v. Bank, supra. The defendants contend that, by the provisions of section 507 of the Code of Civil Procedure, which provides that the defendant may set forth in his answer as many defenses or counter-claims, or both, as he has, whether they are such as were formerly denominated legal or equitable, he should be permitted in this action to avail himself of his equitable rights the same as if he had brought an action in equity for a rescission of the contract; and as the plaintiff has consumed some of the ice, sufficient in value' to repay him the money he advanced on the contract, that fact should have defeated any recovery in this action, if the jury found the charge of fraud was sustained.
In their answer the defendants did not ask for a rescission of the contract, nor offer to refund the money paid thereon. Whatever may be the true construction to be given to the answer with a view of ascertaining the precise nature and character of the defense intended to be interposed thereby, it is clear that the defendants did not regard the contract as rescinded, nor ask for a judgment that it be so declared. The answer states, among other things,that after the defendants discovered, that the notes had not been executed by the plaintiff, they re-presented the notes to the plaintiff, and requested and demanded that he sign the same, and thereby complete the purchase of said ice pursuant to the agreement; and the said defendant refused to sign the same, or to pay the balance of $100, and complete the purchase of the said ice pursuant to the agreement; and thereupon the defendants refused to allow the plaintiff to remove the ice until he should sign and execute said notes ac-cording to his agreement, and thereby complete the purchase of said ice. They also allege that at the time they discovered that the notes had not been signed and executed as provided by the written contract, the plaintiff had removed a quantity of the ice, which was of the value of $75, and that the season for the sale of the ice had then passed, and the defendants were unable to-dispose of the same, and that it remained on their hands unsold, and greatly wasted, and that by reason of the plaintiff’s failure to complete his purchase' of the said ice as aforesaid they had been damaged in the sum of $250, and demand judgment for that sum against the plaintiff, with costs. If the defendants had suffered any damage by reason of the plaintiff’s fraud, they would have constituted a good counter-claim, for the reason that it would be connected with the plaintiff’s cause of action, within the rule as stated in Carpenter v. Insurance Co., 98 N. Y. 552, although the plaintiff’s action was in tort. For instance, if the plaintiff was insolvent, and an indorsement of his note by a responsible party was necessary to secure to the defendants the payment of the purchase money, then they would have been entitled, on proving those facts, to have offset against the plaintiff’s demand the damages arising from the failure to receive the security as agreed upon by the contract of sale. We think the ruling of the trial'judge was correct, that the only" question for the jury was the value of the ice.
The defendants asked the court to submit to the jury, as a question of fact for them to decide, whether or not the transactions between the plaintiff and the defendants was with the mutual intention, that is, at the time of the de= livery of the bill of sale, of transferring the title of the property to the plaintiff. This the court declined to charge, and the defendants excepted. This ruling presents the question whether the defendants’ answer put in issue any of the material averments of the complaint. The complaint states a perfect cause of action in tort. It alleges that the plaintiff purchased of the defend-0
*620 ants all the ice in the store-house mentioned for the sum of $825; and that they signed and delivered to him a bill of sale of the ice, setting out a copy thereof, which recites that for and in consideration of the sum of $325, to them in hand paid, “we hereby sell, assign, and set over to Edward McLeod * * * the ice now stored in the ice-house, * * * together with the free use of the building in which the said ice is now stored until the 15th day of ¡November, 1887, to have, hold, and own said ice, and every part thereof, and the use of said ice-house and all our rights and privileges for and during the time aforesaid.” By the terms of the contract the plaintiff was to pay $100 in cash, and the balance to be secured by two notes, as already stated, and that he paid on and towards the $100 the sum of $68.45, and made the promissory note as stipulated in the contract, and delivered them to the. defendants, and they received the same in payment for the ice and the privileges of the ice-house, and then and there surrendered up and delivered said ice to the plaintiff, and that he then and there received the same. It then alleges the wrongful conversion and taking of the ice by the defendants, and the value thereof. The defendants, in the first clause of their answer, “deny each and every allegation contained therein, and not hereinafter specifically admitted or explained.” In their second answer they recite the negotiations between themselves and the plaintiff, which led to the making of the written agreement, “as stated in said complaint,” and thereupon the defendants •caused to be prepared a bill of sale containing the substance of the said agreement, and that they signed and executed the same, and presented it to the plaintiff with the promissory note, and requested him to execute the notes and pay the money, as provided in such agreement; that the plaintiff, with the intention of deceiving the defendants, delivered the notes to the defendants unexecuted, indorsed by McMahon, with the intent of defrauding the defendants, and of obtaining possession of the ice, and that they received the notes inadvertently, believing that they had been signed and executed by the plaintiff in accordance with the agreement, and were good and valid legal paper. The other parts of the answer have been already substantially stated. This . answer presented no issuefor trial, except the one of fraud alleged therein. All technical rules of pleadings are abolished by the Code, and the form of denial . adopted by the defendants in their answer is permitted, but it cannot be commended, as'it often leads to doubt and uncertainty as to the averments in the complaint which are intended to be denied. We think that the answer con•stitutes an explanation of every fact stated in the complaint relative to the making and delivery of the contract, as well as the delivery of the possession ■of the ice and ice-house to the plaintiff, and also as to the circumstances connected with the making and delivery of the notes, and gives a reason for their .action in resuming possession of the ice and ice-house, and therefore the material allegations in the complaint were excepted from the denial contained in ■the answer. The allegations which are denied by this answer are those only which are not explained by the statements contained therein, as to the cir•cumstances connected with the making of .the contract, and the delivery of the property which was the subject of the sale. A construction of doubtful or uncertain allegations in a pleading, which enables a party by thus pleading to throw upon his adversary the hazard of interpreting their meaning, is no more allowable now than formerly; and, when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. Every allegation in the complaint is alluded to and explained by the answer. It was not contended on the trial by the defendants that they had not in fact delivered the ice to the plaintiff under and by virtue of the contract. The •construction which we have put upon the answer is fully supported by the case of Clark v. Dillon, 97 N. Y. 370. If these views are correct as to the •effect of the answer, then none of the exceptions which have been argued were well taken. Judgment affirmed. All concur.